In this argument, I hope to cover four areas to provide a brief context in which the legal error asserted occurred, to describe that legal error, to set out the proper standard that we believe this Court should apply under the ADPA, and then to explain why we believe relief should be granted. The context, I believe, is important here, because the context is a trial involving allegations of multiple acts of sex abuse and other sex offenses, in which the child-alleged victim gave a sworn recantation, in which the defendant testified at trial and denied the allegations, in which the defendant called character witnesses at trial in support of his truth and veracity, and in which the defense presented a motive for the complainant to fabricate the allegations because she was having sex with a young boy. I think that context is important as you get to the end and determine what impact the error here would have. Because we see this as a very close and contested case, we submit that any small error would tip the balance. The error itself is set out at the excerpt of record, supplemental excerpt, pages 34 to 36. If the Court has the full transcript available to it, it would begin at pages 313 of the trial transcript and end at page 317. I have to go back and look at that. From the supplemental excerpts, what were you referencing from the supplemental excerpts? Pages 34 to 36 is where the State has, in some of the material submitted from the State court proceedings, excerpts of the trial transcript. I have brought a brief supplemental excerpt that I could submit to the Court if you do not have the full transcript available to the district court. But what you find is that the questioning about the recantation begins in the manner that the Oregon Supreme Court has said is permissible. The general question, do people recant, what's it like, and the general question about there being a similarity. Where it ends, however, on pages 316 and 317 is where it crosses the line that the Oregon Supreme Court has set up. The question that's asked is, have you had a chance to review the file in this case? I've read this report, yes. Including the typed recantation, yes. Back to the comment, have you seen such recantations in your experience? I've never seen a typed recantation. I've seen others. Question, the wrap-up here. After he's identified the file, in your opinion, based on facts that there was a previous trial set in this matter, and then the defendant failed to appear and was at large for a while, and then came back into the system, are you surprised that a recantation surfaced? No. So the error here is that going from the general common experience, the witness is asked, did you look at the file? And then not only offers the opinion of, I'm not surprised, based on the review of the file, but injects the inference that this recantation has occurred while the defendant was at large on some sort of escape statute. Wasn't that perhaps an inartful hypothetical question of an expert? I guess, Your Honor, I was not seeing this as hypothetical, which is why I started the discussion with page 313 of the record, because I think that what you find on 313, 314, and 315 are hypothetical questions. And what I think that we have here is something that is crossing from the hypothetical to the specific about this file, this witness, and the specific facts of this case. That's the distinction I would draw. But in hypothetical questions to experts, you try to find, put in the hypothetical the facts that have occurred to see what the expert would say based on that. Isn't that true? That is correct, Your Honor. But I believe that what the wrap-up here did was go beyond the hypothetical, which is, is this common to the specific? Are you surprised about the recantation in this case? And while I think the defense position would be stronger had the question been, do you believe she was not able to obtain the same information? Counsel, you sort of have two problems here. One is that you have to persuade the court that this is, that this would be reversible error if it were committed by, in a trial, as it was here. But your bigger burden is that you are now in federal court and that your argument is that it was ineffective assistance of counsel to do this. You're not arguing for the first time in this court that this was simply an error committed by the trial court in allowing this testimony and that it, the conviction ought to be reversed, but that counsel failed under some objective standard to render effective assistance of counsel here. Absolutely, Your Honor. And that is the next portion of the argument that I hope to make that gets me right to that. Under the ADPA, what we see here is that the State has taken inconsistent positions. In the State proceedings, they said there was no proper objection. Their initial position is, this is defaulted. You can't raise this claim on direct appeal because you didn't object properly. You should have made a specific objection, you didn't. When they come back in post-conviction and Mr. Hernandez says, my lawyer was ineffective for failing to object, the State says, sorry, the objection was proper. They can't have it both ways. And in any case, as I made it clear, the State cannot take inconsistent positions. So what I see here is that there is no deference due under the ADPA. This is a Delgado situation where the only written opinion by the State court is the post-conviction court's, the trial post-conviction court's opinion that there is no evidence that there was a failure to make objections. But that statement is inconsistent with the position that the State itself took on a direct appeal, that there was a failure to make objections. And if you review supplemental excerpt pages 64 and 65, you see that position asserted by the State. So under D2 of 2254, we submit there is an unreasonable statement of the facts in the only written opinion by any State court because it's clear that there was a failure to make an objection. It's not in the record and the State made that argument. And with respect to the legal standard under the ADPA, because there is no written opinion on this issue by the Court of Appeals, and necessarily by the post-conviction trial court, we're in a Delgado situation. So taking the, certainly there is still some deference due, but the independent review that this Court must, I get back to where I began, which is under that independent review, it is impermissible under State law, from Middleton and the other cases that are cited, that say it is proper to ask the hypotheticals and to draw reference to other experience. It is impermissible under State law to ask the specific question. Are you going to get to the prejudice prong? Again, Your Honor, I tried to get to that by setting up the context at the beginning. Close case. No, I'm just looking at your time. Close case. Because it's a close case with a sworn recantation, the defendant who denies it, where there is some physical evidence to be sure, but an explanation for much of that physical evidence through the allegation that the young lady was having sex with somebody else. But that was for a brief period of time, and the manifestations of, the physical evidence was for a much longer period of time, so. I understand that, Your Honor. But given a case which has some medical evidence to be sure, but is still, in essence, a swearing contest between a young woman who has given a sworn recantation, the defendant who testifies with a denial and characterization. Actually a child. Excuse me? You said a young woman. I said actually a child. I think it is a close case where anything to tip the balance, this crossed the line, and it is ineffective assistance, and I believe the court can and should reach that under the APPA standard as I outlined it. Thank you. Thank you. Excuse me. May it please the Court, Tim Sylvester for the State Board on this. On the prejudice issue, the other thing I would point out, of course, is that the victim ended up with the same sexually transmitted disease as the defendant had, the petitioner had. It is important at the outset to note the petitioner's entire claim is that the evidence at issue was inadmissible under Oregon law. He has made no argument that the evidence at issue was inadmissible under any federal law or under any federal constitutional provision. I think the short and sufficient answer here is like the district court found. The evidence was admissible under Oregon law. It is admissible under Middleton, and for the last few pages of my brief, I explained there is nothing here. This was admissible under Oregon law. Counsel, if the evidence was inadmissible, would you address the IAC claim? Well, here is the problem. Petitioner's trial counsel made objections in some respects to the evidence when it was admitted. When it came up on direct appeal, the State made two arguments. One, he didn't make a sufficiently specific objection to this particular evidence, and so, therefore, it wasn't preserved. And in any event, the evidence was admissible. The Oregon Court of Appeals affirmed the judgment without opinion, so you can't tell from what the Court of Appeals did with direct appeal whether there was a, whether they said it was, they concluded that it was unpreserved and hence unreviewable or whether it had no merit on the merits. Petitioner then brought up an action for post-conviction relief in which he claimed that his trial counsel provided inadequate, constitutionally ineffective assistance by failing to object specifically to this evidence. Our response was twofold. Because we couldn't tell what the Court of Appeals had done. I don't consider this inconsistent at all, contrary to Petitioner's counsel. We said, because we can't tell what the Court of Appeals did. There's two possibilities. One, that he did adequately preserve it, in which case the Court of Appeals had affirmed that on direct appeal on merits, or that he did not adequately preserve it, but that under the Strickland standard, that particular objection would not have had any merit under Oregon law anyway, so he didn't suffer any prejudice by his counsel's failure to object. What the post-conviction court found, and this is on supplemental excerpt of Record 64, the court found there was no evidence that trial counsel failed to make all appropriate motions and objections that he preserved for appeal. And so what the court was saying was, Petitioner failed to establish that there was an objection that his counsel should have made, but failed to make. That is, is that he failed to make all appropriate objections. He failed to make an objection that he should have made. Now, that could be construed two ways. One, that counsel actually made a sufficient objection to that particular evidence, or that he did not make an objection to that evidence, but it wouldn't have made any difference anyway, because the evidence was inadmissible, and therefore he did not have a valid objection. He did not have an appropriate objection to assert. And so the post-conviction court's finding is ambiguous on that point, just like the Oregon Court of Appeals' decision on direct appeal is ambiguous on that point. It went up on direct appeal from the post-conviction court's judgment, and the parties essentially made, adopted by reference, the arguments that they had made on direct appeal. And the state was arguing, well, I mean, there's two things that happened. Either the court of appeals on direct appeal said it's not reviewable, in which case you should go ahead and resolve the merits here, and on the merits, he loses. Or the court of appeals already has resolved that on the merits on direct appeal, in which case Petitioner's counsel's objection was sufficient. And so that's the way it was presented to the Oregon Court of Appeals, and the Oregon Court of Appeals affirms. And so there's only two possibilities here. One, the Oregon Court of Appeals concluded that the objection was sufficient, and we had already decided that case against him on direct appeal. Or they concluded the objection was not sufficient, but he failed to establish ineffective assistance because the objection would not have had any merit under Oregon law. Either way, Petitioner loses, is the point I'm making, is either he lost this claim on direct appeal, or he lost this claim in his direct appeal from the post-conviction judgment. In one of those situations, the Oregon Court of Appeals necessarily resolved his claim on the merits under Oregon law. If we disagree with your argument and we got to the prejudice prong, what would be your response to opposing counsel's position that because this case was so close, prejudice ensued? As I understand it, the only objection that Petitioner makes at this point is the testimony that's set forth on page 18 of my brief. Prosecutor asked the expert, in your opinion, based on the facts that there was a prejudice trial set in the past, and an independent failed to appear, and was at large for a while, and then came back into the system, are you surprised that a recantation by the victim of the victim surfaced? No. That's the only basis for his claim here today. Now, nothing that the prosecutor said in that question was new. All of that already was presented to the jury by other witnesses, by other evidence. The fact that the defendant had been on the lam, the fact that there had been a recantation, the fact that the defendant was arrested and brought back into the case. And so the prosecutor's question did not add anything new that the jury did not already know. Okay? And so then the only question is, are you surprised that the recantation by the victim surfaced? No. Well, first off, I think that under Oregon law, that's an entirely appropriate question and an entirely appropriate answer. All he's saying is that in my training and experience, what happens is we see recantations in these kind of cases where you have a young victim with the, and the rapist is her father, or her father figure, and there's an internal dynamics in the family that causes these kind of recantations to occur. Particularly when it's a recantation to a defense investigator who gets the child alone. Well, the additional element that opposing counsel is referring to is the fact that when he was on the lam or out, coincidentally, the recantation of the recantation came at that point. And the inference was that there was some pressure because he was out at that particular time. So what's your response to that? Well, all of that evidence was presented by other witnesses. Okay? So that wasn't presented by this question. Now, Petitioner, in his direct... What was the other evidence that he was out and he pressured her to recant the recantation? There was testimony. One of the issues that came up on direct appeal was that Petitioner was arguing that under state law, the state should not have presented  while he was on the lam. And that issue was resolved against him on direct appeal, and that's not an issue in this case anymore. So the only thing that this question adds is the expert's opinion that it is not unusual in this circumstance, or he was not surprised that a recantation would occur in this circumstance. But counsel, as you just phrased it twice now, a proper hypothetical would have been, as you said, would a child under these circumstances where the person molested the child and then fled, recant? That wasn't the question. It was specific to this child. Yes, but there was no... I mean, the only issue here is whether the expert's testimony violates the rule under state law in State v. Middleton. That's the only objection that is resolved. Well, that's what I'm saying to you. It doesn't sound to me like a hypothetical to an expert. It sounds either like an argumentative question or a question of a non-percipient witness. Well, I guess I'm not quite following that because what the... It simply is a question. You are the expert. You've had training and experience in this area before. Are you surprised, given what happened in this case, were you The answer is no, I was not. I think what he is simply saying is that in my training and experience, the way this particular case developed, it is not at all surprising that the victim would recant. And that is entirely appropriate testimony under Middleton because it's speaking in general terms. Well, counsel, it's a little more specific. It says, in your opinion, based on facts that there was a previous trial set in this matter and then the defendant failed to appear. So it was specific to this particular case. It was not just a general question regarding what happens typically in cases. But in this particular case, whether it was unusual to recant, for the victim to recant. Well, that's true. And I don't think there's anything improper, at least under the Middleton rule, in tying the expert's description of typical child sex abuse behaviors to the specific facts of the case as long as the witness does not make a direct comment on the credibility of the witness. And the statement by the expert that he wasn't surprised by a recantation is not a direct comment on the credibility of the witness. Rather, it is simply a general statement that in my training and experience, a victim in this kind of situation may recant. So your counter-argument to opposing counsel's argument is that the police officer was just testifying on the likelihood of a recantation in this particular case or in cases in general? Well, it's a little bit of both, obviously, given the fact that it was tied specifically to this case. But what the question was, essentially, is in your training and experience, is it unusual when you have this sort of thing happen? That is, you have a child sex abuse that the perpetrator is the father. The mother is not being supportive of the victim. The defendant disappears. And then suddenly, a recantation surfaces with the defense investigator. And he's saying, no, it did not surprise me. All right. Thank you. We'll give you one minute for rebuttal. Thank you. When the State says in response to the question, this is a little bit of both, I submit they're, in essence, conceding the error under Middleton. To the extent that the statement is a comment on this witness, it is not a general reference to other witnesses. A little bit of both means the recantation is untrue. Don't believe it. When the State began by saying that there is ambiguity here and you can't know what any of the State courts have decided, I submit again, they are making our point that under Delgado and the ADPA, no deference is due. When the State points to SCR 64 and says, read what the supposed fact finding of the PCR court was, and they focus on the word appropriate objections, again, they're making our point because appropriate includes a legal determination. So to the extent they're saying that by saying the objections were appropriate, they're saying that there was a legal determination, then that's not a fact finding and no deference. No deference is due. And with respect to your question, Your Honor, about there being any evidence about him being at liberty, the testimony as I understand it that was admitted and the argument that was made below that is not pursued here, that evidence was inadmissible as sort of flight and inference evidence. As I read the record, there was no link made other than through the police officer's testimony between him being out at liberty and the recantation. All right. Thank you, Counselor. Thank you. The case is argued and submitted. We'll be in recess. All rise. Court is in recess for five minutes. Thank you.
judges: Alarcon, Rawlinson, Bybee